IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Christopher Demont Owens,                    )
                                             )        Civil Action No.8:09-1223-JFA-BHH
                        Petitioner,          )
                                             )
        v.                                   )        **REPORT AND RECOMMENDATION**
                                             )        **OF MAGISTRATE JUDGE**
Warden of McCormick                          )
Correctional Institution,                    )
                                             )
                        Respondent.          )
_____)

        The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254. This matter is before the Court on the Respondent's Motion for Summary

Judgment. (Dkt. # 13.)

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The Petitioner brought this habeas action on May 6, 2009.[1] On August 3, 2009, the

Respondent moved for summary judgment. By order filed August 4, 2009, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the

summary judgment dismissal procedure and the possible consequences if he failed to

adequately respond to the motion. On September 10, 2009, the Petitioner filed a response

opposing the Respondent's Summary Judgment Motion.

## I. PROCEDURAL HISTORY/FACTS

        The Petitioner, a state prisoner, is currently incarcerated at the McCormick

Correctional Institution. In April 2000, the Petitioner was indicted for murder and attempted

_____

        [1]This date reflects that the petition was date stamped as received on May 6, 2009,
at the McCormick Correctional Institution mailroom. (Pet. Attach.) *Houston v. Lack*, 487
U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison
authorities for forwarding to the district court).

armed robbery. Alston T. Devenny, Esquire, represented him. On October 15 -17, 2001, a jury trial was held with the Honorable Paul E. Short, Jr., presiding. The jury found the petitioner guilty as charged and Judge Short sentenced him to life imprisonment for the murder and twenty (20) years for the attempted armed robbery. The Petitioner filed a timely notice of appeal.

On the appeal, the Petitioner was represented by Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense. On October 24, 2002, Savitz filed a motion to be relieved as counsel and an *Anders*[2] brief counsel raising the following issue, quoted verbatim: "The judge erred by preventing defense counsel from arguing, 'there was another witness in this case the state chose not to call . . . You didn't hear from Mr. Love,' since, by the state's own admission, Love was the triggerman." (Return Attach. # 1 - Anders Brief at 3.) On November 18, 2002, the Petitioner filed a pro se brief in which he argued that appellate counsel should not have filed an *Anders* brief. (Return Attach. # 2 - Pro Se Anders Brief.) He argued that the trial court had erred by denying his motion for a directed verdict and new trial motion, and that the trial court lacked subject matter jurisdiction based upon the State's failure to present evidence of malice. *Id.* On May 21, 2003, the South Carolina Court of Appeals dismissed the Petitioner's appeal in an unpublished opinion, *State v. Owens,* Op. No. 2003-UP-355 (S.C. Ct. App. filed May 21, 2003). (Return Attach. # 3.) The Remittitur was sent down on June 23, 2003. (Return Attach. # 4.) The Petitioner did not seek rehearing or certiorari to the South Carolina Supreme Court.

On December 9, 2003, the Petitioner signed an application for post-conviction relief ("PCR"). However, the application was not received by the Respondent until October 27,

---

[2]*Anders v. California*, 386 U.S. 738 (1967).

2005. (App. 373; 385.)[3]   In his PCR application, the Petitioner sought relief based on the following grounds:

      1. Ineffective assistance of trial counsel;

      2. Ineffective assistance of appellate counsel;

      3. Violation of Constitutional rights; and

      4. Subject matter jurisdiction.

(App. 375-182.)  On August 28, 2007, an evidentiary hearing was held with the Honorable Brooks Goldsmith presiding.   (App. 393-461.) The Petitioner was present at the hearing and represented by Charles T. Brooks, III, Esquire.  (App. 395.)   After argument, Judge Goldsmith orally denied relief.  (App. 464-465.) On September 21, 2007, Judge Goldsmith entered a written Order of Dismissal.  (App. 467-479.)  The Petitioner filed  an appeal to the South Carolina Supreme Court. (Return Attach. # 5 - Johnson Pet.)

On appeal, the Petitioner was represented by Robert M. Dudek, Deputy Chief Appellate Defender of the South Carolina Division of Appellate Defense. On July 7, 2008, Dudek filed a motion to be relieved as counsel and a *Johnson*[4] petition for a writ of certiorari raising one issue:

> Whether defense counsel was ineffective for failing to call Petitioner's sister, Antrinette Farr, as an alibi witness where Farr testified at the PCR hearing that she was talking on the telephone with the petitioner at the time the murder occurred which corroborated petitioner's defense that he left the other young men before they committed the robbery which ended in the victim being killed, since there was no viable strategic reason not to call Farr as an alibi witness?

---

[3]The undersigned did not see any explanation for the delay in the record.  In any event, there does not appear to be any issue with the filing date and the Respondent has not argued that the statute of limitations bars this action.

[4]*Johnson v. State,* 364 S.E.2d 201 (S.C. 1988).

3

(Return Attach. # 5 - Johnson Pet. at 2.)  On February 4, 2009, the South Carolina Supreme Court denied the Petitioner's petition for writ of certiorari and granted counsel's request to be relieved.  (Return Attach. # 6.)  The Petitioner apparently also filed a pro se response as the Court referenced it in its order.  *Id.*  However, a copy of it is not in the record and the Respondent states it has not been served upon him and is not in his possession.  (Res'p't Mem. Supp. Summ. J. Mot. at 3.)  On February 20, 2009, the Court issued it remittitur letter.  (Return Attach. # 7.)    In this federal habeas petition, the Petitioner raises the following grounds for relief:

> **Ground One:**  The PCR court erred by not granting Petitioner's Motion for Continuance.
>
> **Ground Two:**  The P.C.R. Court order should be vacated and remand back to circuit court due to judge's order not specifically addressing all Petitioner's issues raised in the application and at the P.C.R. hearing.
>
> **Ground Three:**  The P.C.R. court erred by finding that trial counsel was not ineffective for not motioning the trial court to quash murder indictment after the state failed to present an essential element of malice aforethought of the crime of murder during the Petitioner's trial.
>
> **Ground Four:**  The P.C.R. Court erred by finding that trial counsel was not ineffective for not hiring an investigator.
>
> **Ground Five:**  The P.C.R. Court erred by not finding trial counsel ineffective for failing to investigate and inform the court that jury members were speaking to the victim's family during trial.
>
> **Ground Six:**  The P.C.R. Court erred by not finding trial counsel ineffective for failing to hire and call a ballistic expert.
>
> **Ground Seven:**  The P.C.R. Court erred in finding that appellate counsel was not ineffective for failing to raise issues that were properly preserved for appellate review.
>
> **Ground Eight:**  The P.C.R. Court erred by finding that trial counsel was not ineffective for not motioning trial court to quash murder indictment when Petitioner was indicted as principle but was tried under the hand of one the hand of all doctrine without

the state first showing the existence fo the common design and the participation of the Petitioner.

(Habeas Pet.)

## II. **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this

5

standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

6

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007). Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

9

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

10

### III. **DISCUSSION**

**Ground One**

In Ground One, the Petitioner argues that the PCR Court erred in denying the Petitioner's motion for a continuance. The Respondent contends this issue is procedurally barred and also fails on the merits. The undersigned agrees.

At the beginning of the PCR hearing, the Petitioner moved for a continuance to another term of court or, alternatively, until the following day. (App. 397; 399.) The Petitioner's PCR counsel noted that since the Petitioner first filed his PCR application in 2003, the Petitioner had been represented by three other lawyers. (App. 395.) PCR counsel stated that he had been representing the Petitioner for several months and had read the transcript and the allegations. (App. 396-97.) PCR counsel argued however that, with additional time, he could confer with the Petitioner more and possibly raise an additional issue. (App. 398; 400.) The State opposed the motion. (App. 400.) The PCR Court denied the continuance. (App. 401.)

This issue was not raised in appellate counsel's *Johnson* Petition. The Petitioner contends that he raised this issue in his Pro Se *Johnson* petition. As noted above, the Petitioner's pro se Johnson petition is not in the record. Although the Respondent states he was never served with it (Res'p't Mem. Supp. Summ. J. Mot. at 3), the Petitioner alleges he did serve his Pro Se *Johnson* Petition on the Respondent. (Pet'r's Mem. Opp. Summ. J. Mot. at 2.) However, even if this issue was properly raised below, this issue is without merit. Errors in state PCR proceedings cannot serve as the basis for federal habeas corpus relief. *Bryant v. Maryland,* 848 F.2d 492, 493 (4th Cir. 1988) (holding "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief"). Accordingly, this issue is without merit and should be dismissed.

**Ground Two**

In Ground Two, the Petitioner alleges that the PCR Court failed to address all of his PCR Claims and he is requests that this Court vacate the order and remand the case to the State Court of Common Pleas with a directive that it issue an order addressing all of the Petitioner's PCR claims.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). As noted above, a state prisoner has no federal constitutional right to PCR proceedings in state court and thus any alleged infirmities in state PCR proceedings cannot serve as the basis for federal habeas corpus relief. *See Bryant,* 848 F.2d at 493.

Even construing the Petitioner's allegations as an attempt to allege cause based upon the ineffective assistance of PCR counsel for failing to move fo a ruling on all of the issues raised in the PCR proceeding does not advance the Petitioner's argument as any failure of PCR counsel to file such a motion does not constitute "cause" to excuse the lack of exhaustion. *See Coleman,* 501 U.S. at 752-53; *see also Joseph v. Angelone,* 184 F.3d 320, 325 (4th Cir.1999) (holding ineffective assistance on collateral review does not establish "cause.").

**Ground Three**

In Ground Three, the Petitioner alleges trial counsel was ineffective for failing to move to quash the murder indictment after the State had failed to prove malice during trial and because the indictment did not include "hand of one, hand of all" language. The Petitioner alleges that the evidence at trial was inconsistent and further that "malice could not have been presented through the weapon" fired by a co-conspirator." (Pet.)

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United State Supreme Court established a two-part test for determining whether a convicted person is entitled to relief

12

on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id*. at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id*. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland*, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell,* 506 U.S. 364 (1993). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Strickland,* 466 U.S. at 689.

The PCR Court found that trial counsel was not ineffective for failing to move to quash the murder indictment during the trial. (App. 477.) The PCR Court noted that trial counsel moved for a directed verdict at the close of the State's case for failure to prove the elements of murder and armed robbery. The trial court denied this motion finding that the State had made a proper showing of all elements of the charges, including malice. *Id.*

The PCR Court specifically held that counsel was not ineffective for failing to move to quash the indictment on the ground that it did not contain "hand of one, hand of all" language. (App. 477.) The PCR Court found that the indictment was sufficient and that the "hand of one, hand of all" theory advanced by the State at trial is not an element of murder and was not required to be set forth in the indictment. *Id.* Additionally, the PCR Court noted that the sufficiency of the indictment would not affect the subject matter jurisdiction of the court. *Id.*

Under South Carolina law, an indictment is a notice document and defects in an indictment do not affect subject matter jurisdiction. *State v. Gentry,* 610 S.E.2d 494 (S.C. 2005). Subject matter jurisdiction is the power of a court to hear a particular class of cases, and it has nothing to do with the indictment document. *Id.* at 499. Therefore, the Petitioner is unable to prove prejudice because the court retained subject matter jurisdiction

13

irrespective of his allegedly insufficient indictment. It is axiomatic that failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11 th Cir.1994). Thus, the Petitioner's claim does not satisfy the *Strickland* standard. Furthermore, as pointed out by the PCR Court, trial counsel made a motion for a directed verdict at the close of the state's case challenging the sufficiency of the evidence which was denied (App. 277), and again after the defense presented its case. (App. 286-287.)

Based on the foregoing, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Thus, this ground is without merit.

**Ground Four**

In Ground Four, the Petitioner alleges trial counsel was ineffective for failing to hire an investigator or ballistic expert. Specifically, the Petitioner alleges an investigator was needed based upon the state's failure to identify the murder weapon from among several firearms which were found at the scene.

The PCR court found that trial counsel was not ineffective for failing to hire an investigator or ballistic expert. The PCR Court found that trial counsel articulated a valid trial strategy for not hiring a ballistics expert. The Petitioner's trial counsel testified that the Petitioner's defense was that he was alibi (i.e. he was not present). Thus, any analysis on the bullets would not have been relevant to the Petitioner's defense. Further, the PCR Court found that the Petitioner failed to prove that an expert would have been beneficial to his case.

Specifically, trial counsel testified that he did not hire a independent ballistics investigator because he did not feel that he needed one. (App. 439.) Trial counsel testified that the Petitioner's defense was that he could not have been at the crime scene. (App. 445.) Just as the PCR court found, the Petitioner's trial counsel articulated a reasonable trial strategy. Moreover, the Petitioner has failed to prove that there is a reasonable

14

probability that the result of the proceeding would have been different but for trial counsel's alleged error. *Rose v. Lee*, 252 F.3d 676, 693 (4th Cir.2001) (holding "When counsel make a reasonable strategic choice based upon an investigation of the facts, this Court must defer to that strategic choice."); *Whitehead v. State*, 417 S.E.2d 529 (S.C.1992) (holding reasonable trial strategy will not be held ineffective). Thus, the Petitioner's claim that his counsel was ineffective on this ground is without merit, and should be dismissed.

**Ground Five**

In Ground Five, the Petitioner alleges trial counsel was ineffective for failing to investigate a claim of juror misconduct. Specifically, the Petitioner alleges jurors were speaking with family members of the victim.

At the PCR hearing, trial counsel testified that he did not recall any issue of juror misconduct being presented to him by the Petitioner or his family. (App. 440-441.) Several of the victim's family testified that they never spoke to any members of the jury panel during the trial and they testified that they also did not have knowledge of any other family members speaking with the jury during the trial. (App. 452-461.)

At the PCR hearing, the Petitioner testified that he saw a juror nod at the witnesses, the victim's family, and he brought it to trial counsel's attention. (App. 407.) He testified that trial counsel told him there was nothing that could be done because the jury was already impaneled. *Id.* He also testified that he heard a detective state that one of the juror's had stated that they thought the Petitioner was guilty. The Petitioner testified that he told trial counsel about it and trial counsel questioned the detective who denied it. Finally, the Petitioner testified that his family had brought the alleged juror misconduct to trail counsel's attention. (App. 408.) At the PCR hearing, the Petitioner's sister, Antrinette Farr, testified that she saw jurors talking to the victim's family (App. 428), but she could not recall if she ever told trial counsel. (App. 431.)

The PCR court specifically concluded that the testimony of the Petitioner and Antrinette Farr was not credible on this issue. (App. 476.) Credibility determinations such

as these are factual determinations by the PCR court and as such, they are presumed to be correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *See also Wilson v. Ozmint,* 352 F.3d 847, 858-60 (4th Cir. 2003). The Petitioner has failed to show that trial counsel was constitutionally ineffective or that he was prejudiced by trial counsel's alleged failure to investigate any allegations of jury misconduct. Further, the PCR court's determination was not contrary to clearly established federal law. Based on the foregoing, this claim fails.

In the second portion of this claim, the Petitioner asserts that trial counsel was ineffective because he failed to object to the inadequate polling of the jurors verdict, claiming that two jurors never indicated their verdicts. (App. 359-360.) This issue was not raised or addressed at the PCR hearing. Accordingly, this issue is procedurally barred.

**Ground Six**

In Ground Six, the Petitioner again alleges trial counsel was ineffective for failing to retain and hire a ballistic expert. This issue is essentially the same issue as that raised in Ground Four. Accordingly, for the reasons previously stated in Ground Four, this claim is without merit and should be dismissed

**Ground Seven**

In Ground Seven, the Petitioner alleges ineffective assistance of appellate counsel for failing to challenge on appeal the trial court's denial of a directed verdict motion and denial of a motion for a new trial.

As noted above, the Petitioner's appellate counsel filed an *Anders* brief raising one issue:

> Whether defense counsel was ineffective for failing to call Petitioner's sister, Antrinette Farr, as an alibi witness where Farr testified at the PCR hearing that she was talking on the telephone with the petitioner at the time the murder occurred which corroborated petitioner's defense that he left the other young men before they committed the robbery which ended in the victim being killed, since there was no viable strategic reason not to call Farr as an alibi witness?

16

The Petitioner filed a pro se brief asserting that an *Anders* brief should not have been filed and raising the following issues: 1) the trial court erred in denying the motion for directed verdicts for murder and armed robbery, 2) the trial court should have granted a new trial motion based upon the failure to prove that the Petitioner was either present or committed the crimes, and 3) the trial court lacked subject matter jurisdiction based upon a failure to present evidence of malice. The South Carolina Court of Appeals dismissed the appeal after review pursuant to *Anders*.

During the PCR hearing, the Petitioner testified that his appellate counsel was ineffective. He testified that he wrote his appellate counsel numerous times trying to get him to raise several issues. However, the Petitioner did not specify at the PCR hearing which issues he requested appellate counsel to raise. (App. 415.) The PCR Court found that appellate counsel was not ineffective for failing to raise certain issues. The PCR Court noted that the Petitioner failed to name any specific issues that he wanted appellate counsel to raise. (App. 478.)

Appellate counsel is not required to raise every non-frivolous claim, but may select among them in order to maximize the likelihood of a favorable outcome. *Smith v. Robbins,* 528 U.S. 259, 288 (2000). The Petitioner alleges appellate counsel should have raised the issue of whether the trial court erred in denying a motion for a directed verdict and a new trial motion. The Petitioner's oblique reference to meritorious issues which should have been raised on appeal is insufficient to apprise the PCR court of the substance of the Petitioner's claim or the operative facts upon which he is relying. *See Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (stating that the petitioner must present to the state court "both the operative facts and the controlling legal principles") (internal quotation marks omitted); *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir.1994) ("[T]he exhaustion requirement demands that the petitioner do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely . . . . Oblique references which hint that a theory may be lurking will not turn the trick.")

17

(internal quotation marks omitted).  Accordingly, this claim was not fairly presented to the PCR court and is procedurally barred from federal habeas review.

Even if this claim was preserved, the claim would still fail.  To demonstrate ineffective assistance of appellate counsel, the Petitioner must satisfy the *Strickland* test discussed above.  *Id.* at 687; *see also Williams v. Taylor*, 529 U.S. 362 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  To satisfy the second prong of *Strickland* when applying the test to appellate counsel, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.  In other words, the Petitioner must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal."  *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (citation omitted).

At trial the Petitioner moved for a directed verdict following the close of the State's case which was denied.  (App. 286-288.)  The ground for the motion was that the State had failed to put up any evidence showing that the bullet which killed the victim was actually from one of the defendants.   (App. 287.)   Trial counsel argued other guns had been fired during the incident and there was no forensic evidence establishing which gun shot the victim.  *Id*.  Then, at the end of the trial, the Petitioner moved for a new trial based upon the same grounds as the directed verdict motion. (App. 360.)

The South Carolina Supreme Court has described a directed verdict as follows:

> When a motion for a directed verdict of acquittal is made in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight. The accused is entitled to a directed verdict when the evidence merely raises a suspicion of guilt. The accused also is entitled to a directed verdict when the State fails to present evidence on a material element of the offense charged. However, if the State presents any evidence which reasonably tends to prove the defendants [sic] guilt, or from which the defendants [sic] guilt can be fairly and logically deduced, the case must go to the jury. On appeal

from the denial of a motion for directed verdict, this Court must view the evidence in a light most favorable to the State.

*State v. Pittman*, 647 S.E.2d 144, 153 (S.C. 2007) (internal quotations omitted). Here, the State presented sufficient evidence at trial from which a jury could reasonably conclude that the Petitioner was guilty.

The Petitioner's co-defendant, Ahmed Green, testified that when the Petitioner got into the car, he had an assault weapon with him and they talked about robbing a bar as they rode towards Lancaster. (App. 231-232.) When they arrived at the bar, Green stated that he entered the bar first, with the Petitioner following behind. (App. 235.) One of the victims, Wayne Stewart, testified that they were screaming, "This is a stickup." (App. 77.) Green testified that the Petitioner searched a man who was at the entrance of the bar and he stated that the guy ran into the bathroom and he began shooting out of the bathroom. (App. 235.) Green testified that another co-defendant, Love, then began shooting into the bathroom with an assault weapon that the Petitioner had brought and given to Love in the car. (App. 235.) Green testified that the bartender began shooting and Love turned and shoot him. (App. 236.) Green testified that the Petitioner ran out first followed by Green and then Love. He stated that the Petitioner got into the driver's side of the car and began to drive away, but they stopped and waited for Love who had been shot by the bartender to get into the car. (App. 237-239.)

Viewing this evidence in the light most favorable to the State, this evidence was sufficient to withstand a motion for directed verdict. Green testified that the Petitioner brought an assault weapon into the car and discussed an intent to rob the bar. Green also testified that the Petitioner gave the weapon to Love and they all entered the bar. Finally, Green testified that Love shot the victim with the gun he had been given by the Petitioner. Importantly, the Petitioner has not shown that the bullets which killed the victim were not from the gun he gave his co-defendant Love. He is merely speculating that the man who shot from the bathroom may have actually shot the victim. The Petitioner alleges the

autopsy report states that one .3 cm fragment of grey metal was found in the victim's brain matter. (Pet.'r's Mem. Opp. Summ. J. Mot. at 3.) The medical examiner did not testify, but the solicitor noted at trial that even if she had, "the damage was so extensive that she would not have been able to pinpoint even how many shots struck [the victim's] head, let alone which ones." (App. 290.)

For the same reasons, the motion for new trial was also properly denied. Since the Petitioner was not entitled to a directed verdict or a new trial on these charges, he cannot demonstrate that his appellate counsel's failure to raise these issues on direct appeal prejudiced him as required under *Strickland.* Accordingly, the Petitioner is not entitled to habeas relief on this ground.

**Ground Eight**

In Ground Eight, the Petitioner alleges his trial counsel was ineffective for failing to move to quash the Petitioner's murder indictment. As discussed above in Ground Three, this issue is without merit and should be dismissed.

## IV. CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (# 13) be GRANTED and the Petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

January 12, 2010
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).